LEUGERS ET AL. *v.* LEUGERS ET AL.

*Real property—Action to set aside deed after grantor's death
—Deed never delivered—Grantor lacked mental capacity
to execute deed.*

1. Undisputed evidence *held* to show that deed sought to be
set aside after grantor's death was never delivered.
2. Evidence *held* to show that grantor lacked mental capacity
to transact business or make deed sought to be set aside.

(Decided November 23, 1925.)

APPEAL: Court of Appeals for Butler county.

*Mr. M. O. Burns,* for plaintiffs.
*Mr. H. R. Reigart* and *Mr. Walton S. Bowers,*
for defendants.

CUSHING, J. Plaintiffs prosecute this action to
have a certain deed, dated February 14, 1920, from
Mary Leugers to Elizabeth Leugers, Herman Leug-
ers, and Stella Cole, declared null and void, and set
aside; that the real estate be partitioned, and di-
vided among the heirs of Mary Leugers, deceased.

It is charged that Mary Leugers, by reason of
continued illness, did not have mental capacity to
make a deed or transact business; that she signed
the same under constraint, coercion, and undue in-
fluence, exercised by the defendants.

The answer admits the allegations of the peti-
tion with reference to the death of Mary Leugers,
and with reference to her heirs at law, and denies
that she was seized in fee simple of the real estate

[1] Deeds, 18 C. J. § 541; [2] Id., § 551.

in question at the time of her death; and defend-
ants say that on or about the 18th day of Febru-
ary, 1920, they caused the real estate to be trans-
ferred on the books of the auditor of Butler county,
Ohio, and that said recorded conveyance of real
estate appears in deed record 222, page 306, of the
Butler county, Ohio, Deed Records. Further an-
swering, they deny that they caused or procured
Mary Leugers to sign said paper writing, or that
she was not of sound mind and memory at the
time she signed the conveyance aforesaid. They
deny that by reason of her continued illness she
was in such mental condition that she was wholly
incapacitated from executing a valid deed; deny
that she was under constraint, coercion, or undue
influence, and claim that the conveyance was made
voluntarily, and was her free act; and deny that
they are tenants in common with the plaintiffs,
and ask that the petition be dismissed.

The facts, as we gather them from the record,
are in substance as follows:

Mary Leugers was almost 80 years of age. She
had been sick and practically bedfast for a number
of months. The doctor treated her for hardening
of the arteries. There is some testimony that it
had progressed to a stage approaching senile de-
mentia. There is testimony that she was unable
to control herself, or to notify those about her of
an act of nature. There is evidence to the effect
that she suffered with bronchial pneumonia from
the early part of December, 1919, until about the
middle of January, 1920, and that she was not con-
fined to her bed constantly from the middle of
January to the middle of February, but there were

intervals of an hour at a time when she would sit in a chair; that she had to be assisted to and from the bed.

On February 14, 1920, she signed a deed, purporting to convey the real estate in question to the defendants.

The defendants testified that they at no time talked with her about making the deed, or about having the property transferred to them; that she directed that an attorney be sent for, and stated the disposition she desired to make of the property.

Other witnesses testified that they were there on the 13th of February; others that they were there prior to that date; that she did not recognize them, and did not respond when she was spoken to; that she wrapped the bed clothes around her neck, and acted in a peculiar way.

It is also in evidence that one of the defendants telephoned for the attorney; that he came about 3 o'clock in the afternoon of February 14; and that one of the defendants gave him an old deed, from which he drew the deed in question.

As bearing on the circumstances under which the deed was signed, and the conditions under which it was executed, the following is copied from the record. The witness Bowers testified:

"Q. Then what became of the deed? A. I asked them whether they wished me—to the brother and sisters—whether they wished me to take the deed and file it of record and have it recorded. They said they did. Thereupon we discussed the question of revenue stamps. I said since the matter has—

"Q. Then when the deed was signed, you say it was on this little table? A. Yes.

"Q. Did you and Mrs. Fager sign upon this little table, too? A. I think we did.

"Q. Yes, then you took the deed, didn't you? A. Yes, sir.

"Q. And you asked the family if they wanted you to have it recorded? A. Yes, sir.

"Q. And after the deed was signed by the old lady, she said nothing, did she? A. How is that?

"Q. Old lady Leugers didn't say anything after she signed the deed, did she? A. Oh, I think there was some conversation afterwards.

"Q. I am not asking you that. Did she say anything? A. Yes, she did.

"Q. What did she say? A. I don't recollect. There was quite a few things said after that."

This evidence is undisputed, and shows clearly that there was never a delivery of the deed. There was no direction on the part of the decedent to either deliver or record the deed.

The question of the delivery of the deed is not made by the record. In the case of *Hinchey* v. *Seldon*, 17 Ohio App., 447, we held that an undelivered deed did not transfer the title to property. However, we do not base our decision on that ground. We refer to it for the purpose of showing the circumstances under which the deed was signed.

Much has been said in the brief about the testimony of a Dr. Vereker. We have read his testimony, and also the statement that he signed on the afternoon of February 14th and do not find that there is any serious conflict between that state-

ment and the testimony he gave at the trial. He testified as to the disease and her general condition. In the statement he said that her mind was clear and normal. This could mean nothing more than that it was clear and normal under the physical condition that she was then in, that is, having hardening of the arteries. He also said that she was weak and depressed; that while he attended her she seemed about the same—she could not see or hear well; that there was practically no change in her condition from the time he waited on her in December until she died; that in January and February she seemed to be getting weaker; that her actions in crawling under the bed clothes, covering herself up with them, and tying them around her neck were symptoms of senile dementia.

In view of the whole record, our conclusion is that Mary Leugers, on February 14, 1920, did not have mental capacity to transact business, or make a deed, and that the prayer of the petition should be granted.

*Decree accordingly.*

BUCHWALTER, P. J., and HAMILTON, J., concur.